121 N.J. Super. 90 (1972)
296 A.2d 92
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FLORENCE M. WETMORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided October 12, 1972.
*91 Mr. Thomas F. Shebell attorney for defendant.
Mr. Jack Frost, Deputy Attorney General, for the State (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
YACCARINO, J.C.C.
Defendant appeals from a conviction in the municipal court for permitting an intoxicated person to operate her motor vehicle in violation of N.J.S.A. 39:4-50(a). The appeal was heard de novo on the record. The facts may be summarized as follows:
On the day in question defendant had met John Thomas. They were accompanied by a mutual friend named Clare Lewis. The trio drove from Monmouth County to Perth Amboy where they picked up the children of Clare Lewis. They then returned to Monmouth County and stopped at the Pine Tree Tavern for a short time. They subsequently proceeded to the Wild West Tavern and remained there approximately 45 minutes. Upon departing from the Wild West Tavern Thomas operated defendant's vehicle on Route 9 in Howell Township. At this time the vehicle struck a vehicle *92 operated by Mrs. Jean Treat. Trooper Langen was dispatched to the scene to investigate. Upon arriving at the scene Trooper Langen placed Thomas under arrest for drunken driving.
Trooper Joseph Lucas conducted a breathalyzer test on Thomas indicating readings of .18 and .17, respectively. There was no testimony by the trooper as to the physical appearance or condition of Thomas. Mrs. Treat testified that she was injured as a result of the accident and offered no testimony as to the condition of the operator, Thomas. Thomas testified that he had been drinking all through the day. Defendant testified that she had been with the operator and their friend, Clare Lewis, earlier in the day; that they went to Perth Amboy and picked up Clare Lewis's children, and returned to Monmouth County; that on the trip up to Perth Amboy Thomas operated her vehicle; that they returned to Monmouth County and went to the Pine Tree Tavern where they stayed for a very short time; that they left the Pine Tree Tavern and went to the Wild West Tavern, located on Route 9 in Howell Township. She was unable to testify as to what Thomas had had to drink but that he appeared to be fine and did not appear to be intoxicated. Their mutual friend, Clare Lewis, said she joined Mrs. Wetmore at approximately 3 P.M. that day when they picked her up at her house; that the accident happened at about 6 P.M.; that all during that three-hour time prior to the accident she observed nothing wrong with Thomas, and offered that had it been her vehicle she would have permitted him to drive it. She testified that had she sensed anything wrong with the operator's condition she would not have permitted her children to ride in the car.
There was no testimony from any witness that Thomas appeared to be either intoxicated or under the influence of alcoholic beverages. The testimony as to his condition offered by the State consisted of the two breathalyzer readings *93 and any inference that could be drawn from the trooper's statement that when he arrived at the scene he arrested Thomas for drunken driving.
Defendant contends that the results of the operator's breathalyzer test are inadmissable against her and further contends that the State must show that she knew or should have known of the operator's condition at the time she permitted him to operate her vehicle.
The State contends that the operator's breathalyzer readings and his condition are binding upon the owner and that the statute does not require it to prove that defendant knew or should have known of operator's condition.
The court will first consider the issue of knowledge.
Where an offense, as in this case, is malum prohibitum the Legislature may render an act criminal without the requirement of guilty knowledge or criminal intent. Morss v. Forbes, 24 N.J. 341 (1957); State v. DeMeo, 20 N.J. 1 (1955), and State v. Kinsley, 103 N.J. Super. 190 (Cty. Ct. 1968), aff'd 105 N.J. Super. 347 (App. Div. 1969).
However, the term "guilty knowledge" is not to be confused with the term "knowingly." In criminal law the term "knowingly" has no fixed or precise meaning. It depends on the character of the offense involved. See 22 C.J.S. Criminal Law § 31 at 111,
When used in a prohibitory statute "knowingly" imports something more than carelessness or lack of inquiry. In such statutes, it has been held to mean merely a knowledge of the existence of the facts constituting the crime or a knowledge of the essential facts and not to require knowledge of the unlawfulness of the act or omission. [22 C.J.S. Criminal Law § 31 (3) at 111; emphasis added]
The weight of authority appears to require that before an owner or possessor can be found guilty of permitting an intoxicated person to operate his vehicle it must first be shown that the owner or possessor knew of the driver's condition. 7 Am.Jur.2d § 261, page 813 and 61A.C.J.S. Motor *94 Vehicles § 625 (1), page 342, But see State v. Carlston, 40 N.J. Super. 559 (Cty. Ct. 1950).
It should be noted that the requirement of knowledge by the owner of the operator's condition as a prerequisite for establishing a motor vehicle violation comports exactly with the test established by the law of this state regarding liability for civil damages.
In Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950) plaintiff brought suit against the owner for the recovery of damages for wrongful death. Liability was predicated on the theory that the owner had placed the vehicle in the hands of an incompetent operator.
Relevant to this case is the following statement:
The owner of an automobile may be liable for injury from the operation of that car placed in the hands of one he knows or ought reasonably to know is incompetent to operate it so that the owner ought reasonably to anticipate that in its operation injury will be done to others. Mead supra at p. 206.
The absence of the word "knowingly" from the statute does not indicate a legislative intent to forego it as an element. There are criminal statutes which make no mention of the term knowingly while others do. Yet our courts have read such statutes as if the word "knowingly" were included. See N.J.S.A. 2A:139-1, Receiving Stolen Property.
It is therefore concluded that N.J.S.A. 39:4-50(a) requires the State to prove that defendant knew or should have known that the operator was under the influence of alcoholic or intoxicating beverages at the time the permission was granted.
The last issue deals with admissibility of the driver's breathalyzer readings in the trial of the owner or possessor.
There is no question that statutory presumption created by virtue of the reading is admissible in the prosecution of the operator. There exists a rational connection between his *95 blood alcohol content and its effect upon him. The same, however, cannot be said of operator's test readings as proof against the owner.
Due process of law does not permit the State to convict a defendant through the use of an immaterial presumption. There exists no rational basis to apply the presumption raised against the operator over against the owner.
The owner was not given the opportunity to be present during the test administered to the driver and observe its administration. Neither was she afforded the opportunity to have the operator refuse to take the test, a right given to the driver by statute. See N.J.S.A. 39:4-50.2. Basically, the application of the presumption over against owner would deny her the opportunity to repel the presumption and thereby deny to her the due process of law. See Manley v. Georgia, 279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575 (1929).
Accordingly, it is the judgment of this court that the breathalyzer readings resulting from a test administered to the driver may not be used as presumptive evidence against the owner. Absent these testing results the record is barren of any evidence to prove that the operator was under the influence of alcoholic or intoxicating beverages as alleged.
Therefore defendant is found not guilty and any fine or costs paid by her shall be returned forthwith and her operator's privileges are reinstated.