139 N.J. Super. 556 (1976)
354 A.2d 674
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS M. GORMLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1975.
Decided March 4, 1976.
*557 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. D. Vincent Lazzaro, attorney for the appellant.
*558 Mr. Richard J. Williams, Atlantic County Prosecutor, attorney for the respondent (Mr. Jeff S. Masin, Assistant Prosecutor, on the brief).
PER CURIAM.
This appeal stems from the conviction of defendant Thomas M. Gormley in the Municipal Court of Egg Harbor City for permitting his motor vehicle to be operated by another person, Albert Bridda, while Bridda was under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50(a). He was again found guilty on review by the Atlantic County Court which heard the case de novo upon the transcript of the municipal court trial. N.J.S.A. 2A:3-6; R. 3:23-1, 3:23-2 and 3:23-8(a). Both courts imposed the same sentence  a fine of $200 plus revocation (suspension) of defendant's driving privileges for two years and $15 costs.
Defendant appeals from the judgment of the County Court, contending in effect that (1) his guilt was not proved beyond a reasonable doubt, and (2) that the statutory presumption[1] that the driver, Bridda, was under the influence of intoxicating liquor, should not have been used as evidence in the prosecution against him, the owner of the car. We find no merit in either of these contentions.
Frank Cinkowski, sergeant of police of Egg Harbor City, testified at the trial in the municipal court that at about 4:15 in the morning of November 22, 1974 he observed Gormley's car on Route 30 "swerving over the road at" his car; that after he "got behind" Gormley's car "it swerved over to the curb lane, and then into the passing lane. This took place six or seven times. As it was swerving, he [the driver] would increase his speed to about forty miles per hour. Then he would slow down to twenty-five miles an hour." Sergeant Cinkowski stated that he stopped defendant's car; that he "took the driver [Bridda] back to the *559 police station where" he, a qualified operator, "administered the breathalyzer test to" him; that two tests were administered, one at 4:45 A.M. and the other at 4:50 A.M.; that Gormley was present "in the next room" when the tests were given; that he advised both Bridda and Gormley what was going on; that the breathalyzer "was in very good operating order" at the time; that the reading on each test was ".21 percent blood alcohol," and that he also
* * * administered four balance tests; the first one being walking heel-to-toe. The subject's feet were moving. He could not do it. Standing erect, eyes closed, he was swaying. I asked him to stand bent at waist, eyes closed. He was swaying. I asked him to stand heel-to-toe, eyes closed. He had to move his feet. He could not do it.
Sergeant Cinkowski was of the opinion that Bridda had been "driving while under the influence of alcohol."
Defendant, the only other person testifying at the trial in the municipal court, stated that at about 11 P.M. on the night of November 21, 1974 he went to a "lounge" in Blackwood; that Bridda was there when he arrived; that he "had two beers"; that Bridda "had one while I was there. I don't know how many he had before that. I didn't ask him"; that they left the lounge at about 1:00 A.M.  "It could have been later"; that he drove the car until he started to feel tired; that he asked Bridda "if he was all right to drive. He said he was. He looked all right to me. He talked all right to me. He seemed all right to me. So I let him drive. I fell asleep after that." Defendant further testified that the next thing he knew they "were pulled over" and Sergeant Cinkowski "was awakening" him; that he was not present during the breathalyzer tests; that he "was in the next room" at the police station and "didn't see any of the tests."
From our review of the record we are satisfied that the finding below that the driver had been operating a motor vehicle while under the influence of intoxicating liquor could reasonably have been reached on sufficient credible evidence present in the record, exclusive of the results of the breathalyzer *560 tests administered to the driver. State v. Johnson, 42 N.J. 146 (1964). Moreover, the testimony of Sergeant Cinkowski and of defendant amply supported the further finding that defendant knowingly permitted his car to be operated by a person who was then under the influence of intoxicating liquor. This being so, we need not determine at this time the correctness of either the holding in State v. Carlston, 40 N.J. Super. 559 (Cty. Ct. 1956), that knowledge by the owner of the driver's intoxication is not an essential element of the offense, or the contrary holding in State v. Wetmore, 121 N.J. Super. 90 (Cty. Ct. 1972). We leave for another day the resolution of that issue.
Although an affirmance is thus mandated by the record, irrespective of the results of the breathalyzer tests, we deem it important to comment on the second issue raised by defendant, particularly in light of the holding in State v. Wetmore, supra; "that the breathalyzer readings resulting from a test administered to the driver may not be used as presumptive evidence against the owner." 121 N.J. Super. at 95.
We are not in agreement with the reasoning in Wetmore which led to that conclusion. There is no requirement that the owner should be present at the administration of the tests to the driver. Moreover, the statement in Wetmore that the owner was not afforded the opportunity to have the operator refuse to take the test, "a right given to the driver by statute" (at 95) is inaccurate in that no such right exists. State v. Macuk, 57 N.J. 1, 15 (1970). Finally, we discern no denial of due process of law by virtue of the application to the owner of the statutory presumption arising from the driver's intoxication. We have no doubt that the statutory presumptions arising from the amount of alcohol in a driver's blood as shown by chemical analysis (N.J.S.A. 39:4-50.1) are available against the person charged under N.J.S.A. 39:4-50(a) with permitting "another person who is under the influence of intoxicating liquor * * * to operate a motor vehicle owned by him or in *561 his custody or control." To the extent that Wetmore differs from what we have said, it is overruled.
It is true that N.J.S.A. 39:4-50.1 speaks of the amount of alcohol in the defendant's blood; but, when viewed in the light of the language that "In any prosecution for a violation of section 39:4-50 of the Revised Statutes relating to driving a vehicle while under the influence of intoxicating liquor" (emphasis supplied), we are convinced that the Legislature intended the presumptions to arise from the amount of alcohol in the driver's blood, and not to restrict them solely to a prosecution of a driver-defendant.
The judgment under review is affirmed.
NOTES
[1] Based on the result of breathalyzer tests showing that there was at the time .21% by weight of alcohol in Bridda's blood.