207 N.J. Super. 340 (1985)
504 A.2d 155
THE STATE OF NEW JERSEY PLAINTIFF,
v.
WAYNE J. MICHALEK DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided October 1, 1985.
*341 Robert Olejar for plaintiff (Larry McClure, Bergen County Prosecutor, attorney).
William P. Higgins for defendant (Corcoran & Higgins, attorneys).
LESEMANN, J.S.C.
This is an appeal from a municipal court conviction for violating N.J.S.A. 39:4-50(a), by permitting another person who was "under the influence of intoxicating liquor" or who had a "blood alcohol concentration of 0.10% or more" to operate defendant's motor vehicle. The case raises the unresolved question of whether, in a prosecution for that offense, the State must show that the owner of the vehicle either knew or reasonably should have known of the driver's condition.[1]
*342 The municipal court held that no such showing was required. Indeed, it expressly declined to find that defendant knew or should have known that the driver was intoxicated or had a blood alcohol concentration beyond the proscribed amount. Instead it based its determination of defendant's guilt entirely on its finding that defendant had permitted another to drive his vehicle and that the driver was subsequently found to have a blood alcohol concentration of more than .10% while driving the vehicle.
The question presented here has been addressed twice before by trial courts in New Jersey. In State v. Carlston, 40 N.J. Super. 559 (Cty.Ct. 1956) the court found, as the municipal court found here, that since the words of the statute did not expressly refer to the vehicle owner's knowing (or having reason to know) of the driver's condition, there was no reason to imply such a requirement. In State v. Wetmore, 121 N.J. Super. 90 (Cty.Ct. 1972) the court reached the opposite conclusion, noting that in interpreting criminal statutes courts have frequently implied a requirement of "knowledge" notwithstanding the absence of express language so stating.[2]
*343 The question was also presented once to the Appellate Division. However, in State v. Gormley, 139 N.J. Super. 556 (App. Div. 1976) the court concluded that the case before it did not require resolution of the issue. Instead, it said it would "leave for another day" a choice between
the holding in State v. Carlston, 40 N.J. Super. 559 (Cty.Ct. 1956), that knowledge by the owner of the driver's intoxication is not an essential element of the offense, or the contrary holding in State v. Wetmore, 121 N.J. Super. 90 (Cty.Ct. 1972). [at 560]
The present case does require resolution of that issue. Here, notwithstanding the driver's guilty plea to a charge of driving while intoxicated, there is no basis on which this court, in its de novo review of the record, R. 3:23-8, could find beyond a reasonable doubt that the defendant knew or reasonably should have known of that condition.
The driver here was Robert Fischer a friend of defendant. He was driving defendant's automobile (with defendant sitting next to him) when the vehicle was stopped at a "DWI checkpoint" by police conducting random examinations of passing motorists. They were not stopped because of any driving violation nor is there any indication of erratic or improper driving.
After being stopped, Fischer and defendant were taken to the police station where Fischer submitted to a breathalyzer analysis and performed a standard series of tests. The breathalyzer showed a blood alcohol concentration of .15%. A video tape of Fischer's performance of the standard tests was shown at the municipal court trial and was also viewed by this court. It shows an almost flawless performance.
Pursuant to instructions by the police, Fischer walked the required straight line. He closed his eyes and touched his nose *344 a number of times, accurately and without hesitation. He bent over and straightened up with no loss of balance. He recited the alphabet with no mistakes. He was neatly dressed, cooperative and polite. At no time did he sway or stagger. In short, he showed no signs of intoxication.
According to defendant, he and Fischer had been together for about two hours before they were stopped. They had planned to go fishing the next day and were driving to defendant's house to get an early start in the morning. Fischer was driving because defendant was tired. Fischer, defendant said, had drunk "two beers" while the two were together and had showed no signs of intoxication. He had no difficulty in speaking or walking and he drove the car smoothly. In defendant's words, he "did a very good job," and, said defendant, if Fischer "had given me any indication that he was intoxicated and not in control of the vehicle," defendant would not have permitted him to drive the car. Since there is no indication that defendant was under the influence of alcohol (he testified he had nothing at all to drink that evening) or that there was any reason why he could not have driven the car himself, that testimony is reasonable, rational and credible.
The evidence discussed above was substantially uncontradicted.[3] As noted, the municipal court judge expressly declined to *345 find that Fischer had exhibited signs of intoxication or that there was any basis for finding that defendant knew, or should have known, that Fischer was under the influence of intoxicating liquor or had a high blood alcohol concentration while he was driving defendant's automobile.
Although there is no New Jersey appellate authority on the precise question presented here, there is a substantial body of law in this State dealing with the analogous issue of the imposition of civil liability on one person for damages resulting from the intoxication of another. It is significant, and persuasive here, that all of the cases which impose such liability do so on the premise that the defendant knew, or at least should have known, that the actor was intoxicated. None has applied the strict liability standard employed by the municipal court here.
Thus, in Rappaport v. Nichols, 31 N.J. 188 (1959), our Supreme Court held that tavern keepers who sell liquor to customers who are intoxicated, or who are minors, may be liable to third parties injured when those customers then leave the tavern and operate their vehicles negligently. That liability, however, was made contingent on a showing that the tavern keeper knew, or should have known, that the patron was a minor or was intoxicated. Indeed, the Court noted that defendant, by way of defense, "is at liberty to assert that it did not know or have reason to believe that its patron was a minor, or intoxicated when served." Id. at 203.
In Linn v. Rand, 140 N.J. Super. 212 (App.Div. 1976) the Appellate Division held that a social host may be liable for injuries caused by a minor driving a car while intoxicated as a result of liquor served him by the host. Again, the liability was premised on a lack of reasonable care by defendant, with the court expressly referring to the minor's being "visibly intoxicated" *346 when the host served the liquor, and to the host's "knowing the minor was about to drive a car on the public highways." Id. at 219.
Kelly v. Gwinnell, 96 N.J. 538 (1984) involved an extension of the principle of Linn v. Rand to a social host who served liquor to an intoxicated adult guest. While the Court found a basis for liability, it expressed its holding in words which suggest that when dealing with an adult social guest, a showing that the host should have known of the guest's condition might be insufficient to impose liability. Proof of actual knowledge of intoxication may be required. "We hold only," said the Court,
that where a host provides liquor directly to a social guest and continues to do so even beyond the point at which the host knows the guest is intoxicated, and does this knowing that the guest will shortly thereafter be operating a motor vehicle, that host is liable for the foreseeable consequences to third parties that result from the guest's drunken driving. [Id. at 559]
Soronen v. Olde Milford Inn, Inc., 46 N.J. 582 (1966) is another  and perhaps the clearest  indication that "strict liability" will not be imposed under this line of cases, and that civil liability must rest on a finding of "fault": either on actual knowledge, or on facts which should reasonably give rise to knowledge, that the other person was intoxicated.
Soronen dealt with a tavern owner's liability for injury suffered by an intoxicated patron who fell while leaving the tavern. The Court found that the tavern owner did have a duty to the intoxicated patron, but reversed a judgment for plaintiff because the trial court's charge had permitted the jury to impose liability on the tavern owner
even though it [the jury] may not have been satisfied that there was visible intoxication, in the sense that the defendants either knew or should have known of the intoxicated condition when the service [of liquor] was made. [Id. at 593]
"Due care" said the Court, could obviate any burden imposed by a rule of liability based on the tavern keeper's knowing or having reason to know of the customer's condition. But that would not be true if the tavern keeper were to be held liable regardless of the outward appearance of the customer:

*347 ... (A)n undue burden not relievable by care would be imposed if the tavern keeper were held responsible in the absence of intoxication visible to him, in the sense that he knew or should have known of the condition from the attendant circumstances. [Id. at 594]
Not only is that reasoning applicable and persuasive here, but in fact the argument against "strict liability" is considerably stronger here than in those civil cases just discussed.
This is a "quasi-criminal" proceeding. See, e.g., State v. Ryan, 133 N.J. Super. 1, 4 (Cty.Ct. 1975). Penalties for conviction of the offense charged are the same as for driving while intoxicated  and they are severe indeed: a mandatory license suspension for at least six months and a mandatory fine of at least $250. And if the court deems it appropriate, the penalty for a first offense can be as much as a $400 fine, a license suspension for one year and imprisonment for 30 days. Penalties for subsequent offenses are greater still. See N.J.S.A. 39:4-50; see also Kelly v. Gwinnell, supra, 96 N.J. at 545 (citing the Governor's annual message to the New Jersey State Legislature, January 10, 1984, which noted that these penalties are "regarded as the toughest in the nation.").
Certainly if it were the legislative intention to impose those penalties on a "strict liability" basis, against one who neither knew nor had reason to believe that the person he permitted to drive his car was intoxicated, it would seem reasonable to expect the statute to include a clear statement to that effect. That is particularly true in view of the legislative declaration in the New Jersey Code of Criminal Justice that, with respect to "offenses defined both within and outside of this code," any intention to impose strict liability is to be clearly expressed, and in the absence of a clear showing to that effect, no such intention should be inferred.
Section 2C:2-2 of the code (N.J.S.A. 2C:2-2) addresses the question of strict liability, as well as other related questions, under the title "General Requirements of Culpability." In subsection (a) it sets out the four kinds of "culpability" recognized under the code: actions which are taken (1) purposely, (2) *348 knowingly, (3) recklessly or (4) negligently. It then states the general rule that except as thereafter provided,
... a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently as the ... (law defining the offense may require). [N.J.S.A. 2C:2-2(a)]
Subsection (b) contains the definition of each of those four degrees of culpability. Subsection (c)(3) then speaks to the issue presented here:
A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph (b)(2) of this section (i.e., knowingly). This provision applies to offenses defined both within and outside of this code. [N.J.S.A. 2C:2-2(c)(3)]
For further discussion of this policy see The New Jersey Penal Code, Vol. II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1971) at 40-48, and particularly the commission's statement that,
A form of presumption against strict liability is created. A clear legislative intent to impose that type of liability is required.[4] [Id. at 47]
See also, as indicating a reluctance to impose strict criminal liability without a clear showing that such was the legislative intent, the precode case of State v. Hudson County News Co., 35 N.J. 284, 289-295 (1961).
Thus, the policy statement and rule of construction is clear: although there may be occasions when strict criminal liability is called for, the presumption is to the contrary. Strict liability is not to be inferred, and a statute will be held to impose strict liability only on a clear showing that such was the legislative intent.
*349 While the literal language of N.J.S.A. 2C:2-2 probably does not reach a quasi-criminal offense such as a violation of N.J.S.A. 39:4-50,[5] there is no reason why the policy expressed in that section should not be applied here. The reference to offenses defined "both within and outside of" the code emphasizes the broad scope of the legislative declaration. And there is no indication anywhere of a contrary policy which would call on a court to do precisely what N.J.S.A. 2C:2-2 tells it not to do: to infer that the Legislature intended strict liability when it did not say so. Rather, the more rational conclusion is that the policy set out in N.J.S.A. 2C:2-2 applies here as well, and that strict liability should not be imposed unless there is a clear indication that such was the legislative intent.
There is no indication of any such intent here. Nor is there any sound policy basis for implying strict liability in this case. Despite the generally recognized societal reaction to the tragedies and waste brought on by drunk driving (see, e.g., Kelly v. Gwinnell, supra) there is no rational basis for inflicting serious penalties on one who did not know (or have reason to know) that he was doing something dangerous and prohibited: permitting an intoxicated person to drive his vehicle. To punish for that "unknowing" conduct would be  in the words of the Court in Soronen  to impose "an undue burden not relievable by care." Soronen, supra, 46 N.J. at 594.
In Soronen the Court declined to impose that unfair burden in a civil case. There is even less reason why it should be imposed in a quasi-criminal case.
In sum, this court is satisfied that a conviction for violating N.J.S.A. 39:4-50(a) by permitting an intoxicated driver to operate one's motor vehicle requires proof that the defendant-owner *350 knew, or reasonably should have known, that the operator was intoxicated or had a blood alcohol concentration of .10% or more. There was no such proof here and, accordingly, defendant's conviction is reversed.
NOTES
[1] In its pertinent language N.J.S.A. 39:4-50(a) reads as follows:

A person who operates a motor vehicle while under the influence of intoxicating liquor, ... or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, .. . to operate a motor vehicle owned by him or under his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood ... [shall be subject to the penalties thereafter prescribed.]
[2] Prior to 1983, N.J.S.A. 39:4-50(a) provided that a blood alcohol concentration of .10% created a presumption that a driver was under the influence of intoxicating liquor. A 1983 amendment (L. 1983, c. 129, § 1) changed that to provide that one operating a vehicle with that blood alcohol level was ipso facto guilty of an offense: i.e., with a .10% reading the State need no longer prove intoxication; driving with the prohibited blood alcohol concentration was itself an offense. At that time a similar change was made in the provisions dealing with one who allows another to drive his vehicle, so that it also then became an offense to permit someone with a .10% blood alcohol level to drive one's automobile.

The municipal court judge held that this amendment legislatively overruled State v. Wetmore, supra, and imposed strict liability on the owner whenever the driver was shown to have the prohibited blood alcohol level. That reasoning, however, is logically incorrect. The 1983 amendment only changed the showing that must be made as to the driver. As to the driver, it was now sufficient to show either (a) intoxication or (b) the prohibited blood alcohol level. The amendment had no effect on the question of whether the State must also show that the owner knew or should have known of the driver's condition.
[3] The arresting police officer did testify that at the stopping point on the road Fischer emitted a strong odor of alcohol, had bloodshot eyes, and swayed and staggered. He also said that Fischer's performance of the balance tests at that time was "slightly worse" than when the tests were later administered at headquarters. The credibility and significance of his testimony, however, was substantially undercut by his insistence that the video tape of the headquarters' testing also showed Fischer to be swaying and staggering and improperly performing some of the tests. As noted, the tape actually showed nothing of the kind.

In declining to find that Fischer exhibited signs of intoxication which would have been apparent to defendant, the municipal court judge commented that he thought Fischer had performed "everything fairly well" except for walking a straight line. This court, however, saw nothing on that test or any other test which in any way suggested intoxication or any impairment of balance or coordination.
[4] The commission noted that in adopting this "presumption against strict liability", it had rejected the provision in the Model Penal Code which would have prohibited the imposition of strict liability for any offense involving a possible prison sentence. It agreed with "the drafters of the [Model Penal Code] that strict liability is undesirable where a jail sentence is imposed," but concluded that there may be some circumstances where strict liability could be appropriate. The "presumption" against strict liability, subject to being overcome by a showing of "clear legislative intent" to the contrary, was the final resolution of the issue. Id. at 46-47.
[5] The term "offense" is defined in N.J.S.A. 2C:1-14(k) as a crime, a disorderly persons offense or a petty disorderly persons offense. A violation of N.J.S.A. 39:4-50 would not seem to fall within any of those categories. Cf. State v. Kiejdan, 181 N.J. Super. 254, 259 (App.Div. 1981).