226 N.J. Super. 193 (1988)
543 A.2d 1016
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS F. SKILLMAN, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 15, 1988.
Decided June 30, 1988.
*195 Before Judges FURMAN, LONG and SCALERA.
Ivan V. White, Jr., attorney for appellant.
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Lauren A. Metzendorf, on the letter brief).
The opinion of the court was delivered by SCALERA, J.A.D.
The issue in this matter is whether the State must produce evidence establishing that the owner of a vehicle knew or reasonably should have known that he or she had permitted another person to operate a motor vehicle while under the influence of liquor or drugs or with a blood alcohol concentration of .10% or more in violation of N.J.S.A. 39:4-50(a). We answer in the affirmative.
Appellant, Thomas F. Skillman, Jr., was convicted in the Bernardsville Municipal Court of allowing one Sandra J. Conklin to operate his motor vehicle as an unlicensed driver in violation of N.J.S.A. 39:3-39b and permitting her to operate it while intoxicated as evidenced by a breathalyzer blood alcohol reading of .10% or more in violation of N.J.S.A. 39:4-50(a). On appeal to the Superior Court, Law Division pursuant to R. 3:23-8, he was again convicted of having violated those statutes.
Although this appeal has been prosecuted from both convictions, that portion directed to the conviction of allowing an unlicensed person to operate the vehicle is clearly without merit and we affirm the lower court on that issue. R. 2:11-3(e)(2). However, the remaining conviction is vacated for the reasons hereinafter set forth.
At the trial in the municipal court, the State introduced evidence to establish that on June 19, 1985 at approximately 12:53 a.m., police officer Joseph DeGregorio responded to a call and observed a motor vehicle being driven by Sandra J. Conklin. The defendant and Vincent Mercurio were passengers. The *196 vehicle was stopped on the basis of the officer's prior knowledge that Conklin did not have a valid driver's license. By that time defendant had positioned himself in the driver's seat. Because the defendant and Conklin denied switching positions they were taken to police headquarters where DeGregorio noticed an odor of alcohol on Conklin's breath, that her eyes were bloodshot and her speech was slurred. Accordingly, she was subjected to a series of physical coordination tests which she performed satisfactorily except for one test, and two breathalyzer tests at 1:53 a.m. and 2:00 a.m. respectively which registered .11% blood alcohol readings.
Defendant's motion for a dismissal of the charges at the end of the State's case was denied. Defendant and Gerry Pitman, at whose house defendant and Conklin had been before the incident testified that Conklin had imbibed some two or three seven ounce beers but her behavior did not appear to be abnormal and that there was no reason to suspect that Conklin's ability to drive was impaired in any respect.
The municipal court judge reserved decision and issued a letter opinion. He concluded that Conklin was guilty of operating a vehicle in violation of N.J.S.A. 39:4-50 solely because her blood alcohol reading was more than .10%. Then he said,
I turn now to the decision on the cases brought against Thomas F. Skillman, Jr. I do not believe that the standard of responsibility that is imposed against someone like Mr. Skillman who allows an intoxicated driver to operate his vehicle is different than the standard which is to be applied in sustaining the burden of proof by a police officer in the case where the operator is charged. Thomas Skillman in my opinion allowed Sandra Conklin to knowingly operate his motor vehicle inasmuch as he was in the car with her and since it has now been determined that Sandra Conklin was in fact under the influence of alcohol. I do hereby find the defendant Thomas F. Skillman guilty of 39:4-50, allowing Sandra Conklin to operate his motor vehicle knowingly while she was intoxicated. I do not believe that this defendant can get out from under the clear admonition and prohibition of the statute by simply saying that based upon his observations he didn't think that she was that drunk. The effect of the breathalyzer test, properly administered to Sandra Conklin, which formulates the essential basis for the conviction of her becomes the basis for the conviction upon what I assume to be a first offense.
In other words, defendant's conviction for permitting Conklin to operate the vehicle while impaired was based solely upon the *197 breathalyzer evidence that her blood alcohol registered more than 0.10% and not upon any observations that anyone made or could have made of her external behavior at the time.
The Law Division judge likewise rested his conviction on the basis of the breathalyzer readings alone observing that "[defendant's] knowledge of Miss Conklin's intoxicated state is not a necessary element of the offense, as it would seem impossible for anyone who permits another to drive to know what that person has by way of [blood alcohol] concentration without a test being made."
The pertinent part of N.J.S.A. 39:4-50 provides that,
(a) A person who ... permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood, shall be subject; [to the same penalties as the person operating the vehicle in such condition.]
On appeal the defendant argues that the trial court erred in its construction of the statute by not requiring the State to produce evidence from which it could have concluded that he knew or should have known that Conklin would consequently be operating his motor vehicle in violation of the statute.
Both parties concede that the precise issue has not been decided by any appellate court in this State. In State v. Carlston, 40 N.J. Super. 559 (Cty.Ct. 1956), the court held that absent the word "knowingly" in the statutory language, conviction for such an offense did not require such an element. Thereafter, in State v. Wetmore, 121 N.J. Super. 90 (Cty.Ct. 1972), a Superior Court judge declared that to the contrary, actual or constructive knowledge was a required element of the offense.
Thereafter, we had occasion to review a defendant's conviction for violation of N.J.S.A. 39:4-50(a), based upon his allegedly permitting his motor vehicle to be operated by a person who was under the influence of intoxicating liquor in State v. Gormley, 139 N.J. Super. 556 (App.Div. 1976), where defendant had been convicted based on the driver's breathalyzer results *198 and independently, on other evidence demonstrating defendant's knowledge of the driver's condition. While we recognized the dichotomy between the results in the Carlston and Wetmore decisions we reserved "the resolution of that issue" because there was sufficient evidence in the record otherwise to support the trial court's conclusion that the defendant there did have knowledge of the driver's impaired condition.
More recently, in State v. Michalek, 207 N.J. Super. 340 (Law Div. 1985), a trial court again had occasion to address the issue,
"The case raises the unresolved question of whether, in a prosecution for [an N.J.S.A. 39:4-50(a)] offense, the State must show that the owner knew or reasonably should have known of the driver's condition." [Id. at 341].
Recognizing the inconsistent holdings of those previous cases the court resorted to an analysis of the cases upon which our courts have assessed civil liability against an owner for such an activity. Noting the general principle that "quasi-criminal" offenses such as that involved here, should be construed strictly before criminal culpability may attach that court concluded,
"... there is no rational basis for inflicting serious penalties on one who did not know (or have reason to know) that he was doing something dangerous and prohibited: permitting an intoxicated person to drive his vehicle." [Id. at 349].
We agree substantially with the rationale of State v. Michalek. See also 7A Am.Jur.2d, Automobiles and Highway Traffic, § 309, pages 496-497; Stacy v. State, 228 Ark. 260, 306 S.W.2d 852 (1957); Lewis et al. v. State, 220 Ark. 914, 251 S.W.2d 490 (1952); Munda v. State, 172 Ga. App. 857, 324 S.E.2d 799 (1984). The reference to these principles of civil liability serves to highlight the injustice which might result from the failure to require proof of the element of actual or constructive knowledge in a criminal prosecution. Annotation, "Liability Based On Entrusting Automobile To One Who Is Intoxicated Or Known To Be Excessive User of Intoxicants," 19 A.L.R.3d 1175 (1968).
In 1 Wharton's Criminal Law, (14th Ed. 1987), § 23 at 102, the author discusses the dynamics of our society which have led to the legislation of offenses which do not require mens rea or a "guilty mind,"

*199 While such offenses do not threaten the security of the State in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element.
However, the writer was careful to explain that,
The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.
Thus, the basis for imposition of such strict liability rests upon the common-sense reasoning that the violator always has it within his or her control to prevent commission of such an offense by the exercise of reasonable care. In this context, the consequences of criminal culpability would be inescapable absent the requirement for the State to prove actual or constructive knowledge.
A contrary holding would result in exposing owners or custodians of a motor vehicle to the same severe penalties imposed on impaired drivers regardless of when and under what circumstances permission was granted. For example, if one were to authorize another to operate a motor vehicle at a time when the permittee is demonstrating no abnormality and the permittee thereafter, day or months later, imbibes to such an extent that intoxication or a prohibited blood alcohol level results without any actual or constructive notice to the owner or custodian, criminal culpability could result. Additionally, no owner or custodian could comfortably consent to anyone operating a motor vehicle after the latter has imbibed even a small quantity of alcohol, without first subjecting that person to a reliable breathalyzer test. We do not believe that the Legislature intended to impose criminal responsibility in circumstances which are clearly beyond the control or knowledge of an owner or custodian.
Accordingly, we hold that before a person may be convicted of permitting another person to operate a motor vehicle under the influence of intoxicating liquor or drugs, or in violation *200 of the statutory standard for blood alcohol level, the State must produce evidence from which the trier of fact may reasonably infer, beyond a reasonable doubt, that such owner or custodian knew or reasonably should have known, of the permittee's impaired condition to drive.
While it may be argued that such evidence was produced here, defendant's conviction was based solely on the judge's finding that because Conklin operated the vehicle with a blood alcohol reading of more than .10%, defendant was guilty of violating N.J.S.A. 39:4-50(a), even though he did not know or have reason to know of that condition. Such a per se conviction is proscribed by our interpretation.
However, we affirm his conviction for allowing an unlicensed driver to operate the vehicle in violation of N.J.S.A. 39:3-39b. In that instance, it was within his ability and control to inquire of Conklin to ascertain, on a prima facie basis if she possessed a valid driver's license before allowing her to operate his automobile.
We therefore vacate the defendant's conviction for the N.J.S.A. 39:4-50(a) violation and direct that a judgment of acquittal be entered on that offense only.