JOHN TRICOLI, RESPONDENT, v. DONATO CENTALANZA AND RAFFAELE CENTALANZA, APPELLANTS.

Submitted June 6, 1924—Decided October 8, 1924.

1. In an action brought against two or more tort-feasors the court will not admeasure the damages to be paid by them, as between themselves, upon any theory of equitable admeasurement.
2. In a civil action akin to the common law action of trespass *vi et armis*, exemplary damages may be assessed against the defendants.

On appeal from the Orange District Court.

Before Justices TRENCHARD, MINTURN and LLOYD.

For the appellants, *Thomas Brunetto.*

For the respondent, *Gaetano M. Belfatto.*

The opinion of the court was delivered by

MINTURN, J.   "Run away, Maestro Juan, I am going to kill you."

Such was the ferocious threat that disturbed the atmosphere, not of prehistoric Mexico, where upon desolate plains the savage coyote still bays at the moon, nor yet of classic Verona, where dramatic memories of the houses of Montague and Capulet still linger to entrance the romantic wayfarer, but from the undiluted atmosphere of Bloomfield avenue, where it winds its attractive course through the prim rococo shades of modern Montclair, which upon the day succeeding Christmas, in 1923, sat like Roma immortalis upon its seven hills, and from its throne of beauty contemplated, with serene satisfaction, the peace and tranquility of the modern world.

The Maestro, however, with true chivalric disdain, refused to retreat, but determined, at all hazards, like Horatius, to hold the bridge, or rather the stoop upon which he stood. Like a true Roman, inoculated with the maximum percentage of American patriotism, he turned defiantly to the oncoming house of Centalanza, and proclaimed in the bellicose language of the day, "You, too, son of a gun."

In the days of the Montague and Capulet aristocratic rapiers and swords defended the honor of their respective houses, but in this day of popular progress the Maestro and the Centalanza sought only the plebian defense of fists and a shovel.   As a result of a triangular contest, the physician testified that the Maestro was battered "from head to buttocks," a distribution of punishment, it may be observed, which, while it may not be entirely æsthetic in its selection of *a locum tenens,* was, to say the least, equitably administered

and distributed. Indeed, so much was the Maestro battered, that his daily toil lost him for twelve days, and the trial court estimated that this loss, together with his pain and suffering, and the aggravation of the trespass, entitled him to receive from the house of Centalanza $240.

The latter, however, has appealed, and alleges that the Maestro proved no substantial cause of action against them. But the learned trial court, upon this contested state of facts, concluded, and we think properly, that there was an issue of fact thus presented, since the suit was for assault and battery in the nature of trespass *vi et armis*. But the defendants, Centalanza, insist that two distinct encounters took place, one by both defendants and the other by one only, and they ask how can such a physical *contra temps* be admeasured so as to impose upon each member of the house of Centalanza his fair share of compensation for his physical contribution to the melee? The inquiry possesses its latent difficulties, but since it is an admitted rule of law that the court will not distribute the damages between tort-feasors, upon any theory of equitable admeasurement, the house of Centalanza obviously must bear the entire loss without seeking a partition thereof. *Ex turpi causa oritur non actio. Mitchell* v. *Trubitt*, 8 *T. R.* 69; 8 *R. C. L.* 667, and cases.

Indeed, it would prove to be a rare feat of judicial acumen were the court to attempt to give due credit to Donata Centalanza for the prowess he displayed in his fistic endeavors, and to assess to Raffale Centalanza his mead of financial contribution for the dexterity with which he wielded his handy implement of excavation. It is doubtful, even in these days of the mystic prize ring, whether such a metaphysical test may be included among the accredited mental accomplishments of a *quasi*-militant judiciary, which, while it occasionally indulges in a caustic punch, still strenuously endeavors to maintain the proverbial respectability and regal poise of its ancestral prototype. In such a situation we are not inclined to impose this extraordinary and novel field of jurisdiction upon our inferior courts. The occurrence of

trespass *vi et armis* confers upon the trial court the right to assess exemplary damages as smart money, and this the trial court properly did under the circumstances of the case. *Hoboken Printing Co.* v. *Kahn,* 59 *N. J. L.* 218; *Trainer* v. *Wolff,* 58 *Id.* 381; 17 *C. J.* 977, and cases.

It is contended, however, that the actual damage sustained by the Maestro was inconsequential, and that the rule *de minimus non curat lex* applies. It must be obvious, however, that damage, which to the attending physician seemed to penetrate the Maestro "from head to buttocks," may seem trivial to us as non-combatants, but to the Maestro it manifestly seemed otherwise, and doubtless punctured his *corpus,* as well as his sensibilities. Indeed, he well might declare, in the language of the gallant Mercutio of Verona, concerning the extent of his wound, "It is not as wide as a church door or as deep as a well, but 'twill serve."

The judgment will be affirmed.