59 N.J. Super. 330 (1960)
157 A.2d 701
ELDON TABOR AND EDWARD J. CALLAHAN, PLAINTIFFS-RESPONDENTS,
v.
JOSEPH O'GRADY, DEFENDANT, AND WILLIAM O'GRADY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1959.
Decided February 3, 1960.
*333 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Sidney M. Schreiber argued the cause for defendant-appellant (Messrs. Schreiber, Lancaster & Demos, attorneys; Mr. Roger F. Lancaster, on the brief).
Mr. Jerome B. Litvak argued the cause for plaintiffs-respondents (Messrs. Braff, Litvak & Ertag, attorneys; Mr. Paul H. Greenberg, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiffs Eldon V. Tabor and Edward J. Callahan, rear-seat passengers in a two-door Oldsmobile convertible being driven by the defendant William O'Grady, instituted this action in the Union County Court to recover damages for personal injuries sustained when the automobile collided with an iron telephone pole on Broad Street, Newark, *334 on April 27, 1957. The collision was the end result of the reckless and grossly negligent conduct of the operator in driving, at 3:30 in the morning, from Elizabeth to Newark at speeds in excess of 70 miles per hour. O'Grady's father, the owner of the vehicle, was also named as a party defendant, but the case against him was dismissed at the conclusion of the proofs. The principal issues tried and submitted to the jury were the negligence of O'Grady in his operation of the automobile and the asserted contributory negligence of the plaintiffs, who were invitees, either in failing to control or restrain the driver or in failing to remove themselves from the automobile when the opportunity presented itself. The jury resolved these issues in favor of plaintiffs, awarding damages of $25,000 to Tabor and $424 to Callahan.
Defendant moved to set the verdicts aside on two grounds: (1) plaintiffs, and particularly Tabor, had been guilty of contributory negligence as a matter of law; and (2) the summation of plaintiffs' counsel to the jury was improper, prejudicial and inflammatory. The trial judge ruled that there was evidence that Tabor had been intoxicated, that the jury could logically have concluded that he lacked the capacity to appreciate the extent of the peril to him, and that therefore he was not necessarily contributorily negligent in remaining in the vehicle. The court did not directly pass upon the propriety of the summation, reasoning that defendant's negligence was clear, the verdicts were not excessive and, as a result, "those emotional remarks had no effect upon the jury * * *." On this appeal, defendant challenges both of these rulings.
Plaintiff Tabor, 27 years of age on the date of the accident, left his home in Linden, N.J., at 6:00 P.M. on Friday evening, April 26, 1957. He went to a White Castle restaurant in Linden and "stayed there for a while." He then went to a White Castle in Elizabeth, his friend Bernie driving him. At about 11:00 P.M., Tabor went to the Silver Moon bar in Elizabeth and there consumed a pizza pie and "three or four highballs," consisting of whisky. He left at about *335 midnight and had nothing further to drink during the evening. Tabor then returned to the Elizabeth White Castle, where he met the plaintiff Callahan, the defendant O'Grady, and O'Grady's friend, James W. Hoey.
Prior to arriving at the White Castle on his motorcycle, Callahan had had four to seven glasses of beer. As for Hoey and the 19-year-old O'Grady, they had gone for a ride with two girls in O'Grady's father's car, had taken the girls home, and then proceeded to the White Castle located at the corner of Elmora and Westfield Avenues. Neither had imbibed any alcoholic beverages.
These four young men remained at the White Castle until after 3:00 A.M., talking, drinking coffee, and reading newspapers. Callahan went to drive home but while astride his motorcycle, it fell because the kickstand was not down. The others did not think Callahan "was in shape to drive the motorcycle home," and it was taken to a nearby parking lot and left there for the night. When O'Grady offered to drive Tabor and Callahan home, all four entered O'Grady's car. Hoey sat next to the driver and plaintiffs, as noted, sat in the rear.
O'Grady did not testify, and it is uncontroverted that he drove the car at an excessive rate of speed, estimated at 70 to 75 miles per hour. Hoey remembered that, at times, the accelerator was depressed "all the way." O'Grady ignored several red traffic lights and was going too fast to be able to stop for another. After speeding recklessly through Elizabeth, O'Grady came to the beginning of Broad Street, Newark, a 25-mile-per-hour zone. In making a left turn onto that street, there was some difficulty with a hub-cap. O'Grady stopped the car next to the curb and got out. When he returned, the frantic ride continued down Broad Street.
At least twice during this 10-minute, 3 1/2-mile ride, Hoey told O'Grady to "slow down." The convertible top being down, he was required to speak in a "pretty loud" tone of voice. Hoey testified he spoke loud enough for the two men in the rear to hear him. O'Grady merely replied, "Are you *336 chicken?" to which Hoey answered, "Yes * * * Slow down." Tabor and Callahan did not similarly protest. At the trial, Tabor explained, "Because I heard Hoey name it to him and I thought if it was saying anything more it would make it worse."
O'Grady eventually crashed into a telephone pole on Broad Street, resulting in the injuries for which Tabor and Callahan brought this action. Tabor was taken to the Martland Medical Center. A hospital record, admitted into evidence without objection, concluded with a finding of a physician to this effect: "Acute alcoholic intoxication." The record also states: "Pt. has strong ethenol odor on breath."
At the trial the defense offered no witnesses but relied mainly on testimony elicited from Tabor on cross-examination to support the charge of contributory negligence. Tabor testified in part as follows:
"Q. When he started off from the White Castle going at 75 miles an hour, 70 to 75 miles an hour, and going through red lights did you then become concerned? A. Yes, sir.
Q. Did you then recognize that this constituted a danger to you and your life and limbs? A. Yes, sir.

* * * * * * * *
Q. And what did you do about it? A. I didn't do nothing.

* * * * * * * *
Q. In other words, you were balancing the concern that you had for your life and limb as against the discomfort or inconvenience that you have in getting back to Linden? A. That's right.

* * * * * * * *
Q. Tabor, were you drunk when you were in that car? A. No, I wasn't.
Q. What was your physical condition? A. Well, I was drinking; I was a little bit high.
Q. You were a little bit high? A. Yes, sir.

* * * * * * * *
By the Court:
Q. You were in control of your faculties so that you knew you were in danger. A. Yes, that's right.
Q. Isn't that right? A. Yes, sir."
Expressed in the brief of the defendant is the view that the trial judge erred in refusing to rule, at the close of *337 plaintiffs' case and upon the motion for a new trial, that Tabor was guilty of contributory negligence as a matter of law and as established by his own testimony. It is urged that Tabor's utterances from the witness stand conclusively proved that he was fully cognizant of O'Grady's reckless operation of the automobile and that he failed to act as a reasonably prudent person in not taking affirmative action to avoid the manifest danger. Plaintiffs' argument in reply, adopted by the trial judge, is that, whatever Tabor may have testified to, it was still open to the jury to find that he was intoxicated, that he did not therefore appreciate the peril, and was thus not required to remove himself from the vehicle when O'Grady stopped to examine the hub-cap shortly before the collision.
We have concluded that it is not necessary to consider whether there was sufficient evidence of Tabor's intoxication to present a jury issue as we are satisfied that the question is not material to the issue of Tabor's negligence. The mere fact that plaintiffs, or either of them, were intoxicated does not exculpate them from the charge of contributory negligence, as we shall further develop hereinafter. Since in any event there must be a new trial in this case, see the discussion infra of the second ground of appeal, it is necessary to express our views on the defense of contributory negligence in this case.
A passenger in an automobile must exercise such reasonable care and caution as an ordinarily prudent person would exercise under like circumstances. Ambrose v. Cyphers, 29 N.J. 138, 150 (1959); Bowman v. Central R. Co., 27 N.J. Super. 370, 375 (App. Div. 1953). The guest has the right to assume that the driver will exercise proper care and caution and, until he has actual or constructive notice that the driver is incompetent to operate the vehicle or is operating it in a negligent manner, there is no duty to supervise the driving, to keep a lookout for danger or to warn of a danger as to which there is reason to believe the driver is aware. But while the passenger ordinarily has no duty to *338 control or direct the driver, there is a point where passive reliance upon the driver ends and the duty to take affirmative action begins. 5A Am. Jur., Automobiles and Highway Traffic, § 789 (1956). When it should become apparent that the vehicle is being driven negligently, reasonable care requires that the passenger protest or remonstrate with the driver in an effort to persuade him to drive carefully. Id., at § 800. If the protests are disregarded, there is a duty to leave the car when a reasonable opportunity is afforded, if a reasonably prudent man would do so in like circumstances. Id., at § 802. The duty to alight is qualified by the circumstances.
In the present case, plaintiffs, even if not intoxicated, could not at the time they entered the car reasonably have anticipated that O'Grady would drive in such suicidal fashion; O'Grady was not intoxicated and there was no other basis for a suspicion that he was incompetent to drive. See King v. Jones, 47 N.J. Super. 279, 283 (App. Div. 1957); Orbanus v. Seder, 48 N.J. Super. 512, 516 (App. Div. 1957); compare Petrone v. Margolis, 20 N.J. Super. 180 (App. Div. 1952). Cf. Sothern v. Van Dyke, 114 N.J.L. 1, 8 (E. & A. 1934). Moreover, there was no evidence that O'Grady was not fully alert to the peril he was creating; plaintiffs were not, therefore, under Ambrose v. Cyphers, supra, 29 N.J., at pages 150-151, in violation of the duty to warn of danger. As to the obligation to remonstrate, distinguishable from the duty to warn of a specific danger, Tabor could be found by a jury to have been reasonably of the belief that any protest on his part would do more harm than good. O'Grady having ignored Hoey's remonstrances, it is questionable that any further protest would have averted the risk, and the fact-finder could justifiably find no departure from reasonably prudent conduct in plaintiffs' remaining silent.
The only remaining contributory fault with which plaintiffs can reasonably be charged is to have known and appreciated the peril and to have voluntarily chosen not to *339 alight from the car when the opportunity presented itself. It is this alleged default of duty that plaintiffs assert is excused, in part, by their having been in an intoxicated state. The law in this jurisdiction is otherwise. While voluntary intoxication does not itself constitute negligence, it does not excuse acts or omissions which fail to conform to the conduct of the reasonably prudent and sober man. Bageard v. Consolidated Traction Co., 64 N.J.L. 316, 322-323 (E. & A. 1900); Petrone v. Margolis, supra, 20 N.J. Super., at page 188; Hoppock v. Easton Transit Co., 77 N.J.L. 342, 343 (Sup. Ct. 1909); 2 Harper & James, The Law of Torts (1956), § 16.7, pp. 922-23; Prosser, Torts (2d ed. 1955), § 31, p. 127; 38 Am. Jur., Negligence, § 203 (1941); 61 C.J.S. Motor Vehicles §§ 484(b), 486(c). But see McMahon v. New York, N.H. & H.R. Co., 136 Conn. 372, 71 A.2d 557 (Sup. Ct. Err. 1950). Plaintiffs' assiduous effort to prove their lack of capacity by reason of intoxication is beside the point.
There remains to consider, however, defendant's contention that a reasonably prudent and sober person would have extricated himself from the automobile at an appropriate opportunity, and that a duty devolved upon the trial judge so to rule as a matter of law. While mere convenience would not excuse a plaintiff from availing himself of the opportunity to leave an automobile in the face of known danger, we nevertheless conclude that this issue, under all the circumstances here shown, was reasonably debatable and for that reason properly one for the trier of the facts. There were circumstances which, taken together, could be found to have qualified the duty to alight. It was 3:30 A.M. (when even the ordinary unintoxicated man probably would be tired and less perceptive of danger); there was no other apparent mode of transportation to Linden; and the ride had been in progress for but ten minutes. Moreover, it was for the jury to say that the brief stop when O'Grady entered upon Broad Street afforded a reasonable opportunity to alight. Only in the clearest case of fault, where the contrary *340 hypothesis is not fairly admissible, does the question of contributory negligence become one of law for the court. Taneian v. Meghrigian, 15 N.J. 267, 283 (1954). And, the reasonably careful man is not to be endowed "with attributes which properly belong to a person of exceptional perspicuity and foresight." Seipel v. Sevek, 29 N.J. 593, 597 (1959). For a collection of cases on the duty to alight in various circumstances, see Annotations, 154 A.L.R. 924 (1945); 15 A.L.R.2d 1165, 1188 et seq. (1951); 28 A.L.R.2d 12, 94, 95 (1953).
It may develop on a retrial of the cause, moreover, that even if plaintiffs are found to have acted unreasonably, recovery would not be barred therefor. It is the settled rule of this and other jurisdictions that contributory negligence is not available as a defense when the defendant has been guilty not merely of negligence but of wanton or willful misconduct. As was said in Camden, G. & W. Ry. Co. v. Preston, 59 N.J.L. 264, 266-67 (E. & A. 1896):
"In all cases where the defendant's negligence was so gross as to imply a disregard of consequences, or a willingness to inflict the injury, the plaintiff may recover, even though he was a trespasser, or did not use ordinary care."
The jury should be instructed that plaintiffs' contributory negligence, if any, will not bar a recovery if the injuries were caused by the defendant's reckless disregard for their safety. Restatement, Torts, § 482; 2 Harper & James, op. cit., supra, § 22.6; Prosser, op. cit., supra, § 51, pp. 289-290. Cf. Iaconio v. D'Angelo, 104 N.J.L. 506 (E. & A. 1928).
Turning to the second point of appeal, we agree with the defendant that the summation of plaintiffs' counsel to the jury far exceeded the bounds of proper comment and argument. Included in the discourse were matters of evidence not in the record. Counsel for the plaintiffs indulged in unjustified aspersions on defense counsel's motives in not offering the defendant as a witness and accused his *341 adversary of playing "a game of checkers * * * to save a few dollars for his client's pocketbook * * *." The defense was unwarrantably described as being "replete with misleading red herrings" and as being based on trickery, shameful conduct, and the pulling of "stunts." At one point the defendant's attorney was charged with poisoning the minds of the jurors. At another, he was said to be "one of the most able and strategic defense lawyers" in courts throughout the State "trying these defense cases"  a remark which may well have conveyed to the jury the idea that the defendant had liability insurance. Near the conclusion of the summation, plaintiffs' counsel said that if the jurors were to find for the defendant, they would be "giving a medal to O'Grady with an inference that he has a license to go out and drive again like a maniac."
Objection was taken to the remarks at least six times. After one of the attacks upon his presentation of the case, the defendant's attorney said: "Your Honor, I can't sit here and take this. I cannot be charged with poisoning the minds of a jury." The trial judge sustained the objection, as he did others, and cautioned counsel to stop fighting until the trial was over. Ruling on another objection, the court remarked: "Keep personalities of counsel out of it. I have had enough of it myself."
The latitude which counsel has in addressing the jury was clearly exceeded by the inflammatory and altogether improper comments cited above and others. Blackman v. West Jersey & Seashore R. Co., 68 N.J.L. 1 (Sup. Ct. 1902); Leffler v. Aetna Life Ins. Co., 119 N.J.L. 370 (E. & A. 1938); Kulodzej v. Lehigh Valley R. Co., 39 N.J. Super. 268, 274 (App. Div. 1956); Canons of Professional Ethics, §§ 15, 17, 22; Annotation, 29 A.L.R.2d 996.
Plaintiffs argue that any impropriety in the summation was not prejudicial because the defendant was indisputably negligent and the damages awarded were not excessive. As indicated above, however, there was a close factual issue to be resolved in regard to contributory negligence, and the *342 jury may have been inflamed to the point that they were unable to render an impartial assessment of plaintiffs' conduct. The remarks of plaintiffs' counsel were naturally calculated to influence the jury; and where, as here, it is impossible to foretell the outcome of the case on liability, no extraneous evidence is needed to establish that the prejudicial statements actually did influence the jury. Haid v. Loderstedt, 45 N.J. Super. 547, 551 (App. Div. 1957); Purpura v. Public Service Elec. & Gas Co., 53 N.J. Super. 475, 482 (App. Div. 1959).
The judgment is reversed and remanded for a new trial.