939 A.2d 825 (2008)
398 N.J. Super. 112
Mark CHAMPION, By and Through Bonnie Champion EZZO, his Attorney-In-Fact, Plaintiff-Appellant
v.
David W. DUNFEE, Jr., Safeco Life Insurance Company, and Atlantic Employers Insurance Company, Defendants, and
Kristi Kakoda, Defendant-Respondent, and
David W. Dunfee, Jr., Third-Party Plaintiff,
v.
Kristi Kakoda, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 2008.
Decided January 31, 2008.
*826 James F. Crawford, Collingswood, argued the cause for appellant.
*827 Frank J. Caruso, New Brunswick, argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; John C. Simons, of counsel; Mr. Caruso, on the brief).
Before Judges PARRILLO, GRAVES and ALVAREZ.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is whether a passenger in a motor vehicle, which she neither owns nor controls, owes an affirmative duty to a fellow passenger to prevent a visibly intoxicated driver from operating his own automobile. Under the circumstances, we find no legal duty arises from the mere presence of a guest passenger who enjoys no special relationship to, and has not substantially encouraged the wrongful behavior of, the actual tortfeasor. We, therefore, affirm the summary judgment dismissal of plaintiff Mark Champion's personal injury lawsuit against defendant Kristi Kakoda.
The salient facts are not in dispute. At around 7:30 p.m. on June 15, 2002, defendant Kakoda drove to David Dunfee's apartment in Bridgeton. She had been dating Dunfee for about two years. While at the apartment, she saw Dunfee consume two or three beers, although she herself did not drink any alcoholic beverages. Plaintiff arrived at the apartment sometime later, driven there by two other friends who left shortly thereafter. Kakoda left at 11:00 p.m. and drove alone to McDonald's, but returned to Dunfee's apartment one-half hour later. At around midnight, plaintiff received a call from the two friends who had driven him to Dunfee's asking to meet them at a graduation party on nearby Barretts Run Road. Dunfee agreed to take plaintiff to the party.
The trio left Dunfee's apartment at 12:30 a.m. There was no discussion as to who would drive. Although Kakoda had not been drinking, Dunfee drove his 1997 Chevy Camaro with Kakoda in the front passenger seat and plaintiff seated in the rear, behind Kakoda. Their destination was only a couple of miles away and according to Kakoda, who had acted as Dunfee's designated driver on prior occasions, Dunfee showed no signs he was unable to drive the short distance although he did appear to be "buzzed."
En route to the party, plaintiff chided Dunfee about the performance capabilities of his Camaro, comparing it to a friend's speedier Ford Mustang. Dunfee told plaintiff he had modified his Camaro to run faster, but plaintiff insisted the Mustang could outpace the Camaro. As if to prove plaintiff wrong, after Dunfee made a right turn onto Barretts Run Road, he "started hauling tail." Kakoda repeatedly told Dunfee to slow down. First when he reached 70 m.p.h., Kakoda said, "[T]hat's enough, you proved your point." Then when Dunfee approached 100 m.p.h., Kakoda again told him to slow down. A third time, she cursed at him.
Within seconds, Dunfee hit a bump in the road, lost control of the car, blacked out and crashed into a fence on the side of the roadway, severely injuring plaintiff. A State Police investigation of the accident revealed that Dunfee was traveling at least 82 m.p.h., and Dunfee himself admitted speeding between 90 and 100 m.p.h. He also admitted having consumed an entire twelve-pack of beer prior to driving that evening. Indeed, Dunfee's blood alcohol level was .143%.
Plaintiff sued Dunfee for negligence. Dunfee answered, counterclaimed and filed a third-party complaint against Kakoda. Thereafter, plaintiff amended his complaint to name Kakoda as a direct defendant, *828 alleging she had a duty to prevent Dunfee from operating his own vehicle. Kakoda filed an answer, separate defenses, cross-claims for contribution and indemnification from Dunfee, and a jury demand to the affirmative claims of plaintiff and Dunfee's third-party complaint.
Following discovery, Kakoda moved for summary judgment dismissing all claims, counterclaims, cross-claims and third-party claims against her. The motion judge granted full relief, finding that Kakoda owed no affirmative duty to either the driver or injured passenger that was breached in this case. Plaintiff now appeals from this order of summary judgment,[1] arguing that Kakoda, who knew of Dunfee's propensity to drink and drive by virtue of their dating relationship, had a legal duty to take reasonable precautions and that a jury question exists whether she breached that duty on this occasion.
The existence of a legal duty is a question of law to be decided by the court, rather than the jury. Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991). Generally speaking,
[to] determin[e] whether a duty [should] . . . be imposed, courts . . . weigh[ ] and balance[ ] several . . . factors, including the nature of the underlying risk of harm, . . . [such as] its foreseeability and severity[;] the opportunity and ability to exercise care to prevent the harm[;] the comparative interests of, and the relationships between or among, the parties[;] and . . . the societal interest in the proposed solution [based on public policy and fairness considerations].
[J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998) (citation omitted).]
"The scope of a duty is determined under `the totality of the circumstances,' and must be `reasonable' under those circumstances." Id. at 339, 714 A.2d 924 (quoting Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 514, 520, 694 A.2d 1017 (1997)).
"Ordinarily, then, mere presence at the commission of the wrong, or failure to object to it, is not enough to charge one with responsibility inasmuch as there is no duty to take affirmative steps to interfere." Podias v. Mairs, 394 N.J.Super. 338, 346, 926 A.2d 859 (App.Div.) (citing W. Page Keeton et al., Prosser and Keeton on Torts § 56 at 323-24 (5th ed. 1984) [hereinafter Prosser]), certif. denied, 192 N.J. 482, 932 A.2d 32 (2007). Thus, for instance, a passenger in a motor vehicle generally has only two duties: not to interfere with the driver's operations, Lombardo v. Hoag, 269 N.J.Super. 36, 54, 634 A.2d 550 (App. Div.1993), certif. denied, 135 N.J. 469, 640 A.2d 850 (1994), and to protect himself or herself. Ambrose v. Cyphers, 29 N.J. 138, 150, 148 A.2d 465 (1959); Melone v. Jersey Cent. Power & Light Co., 18 N.J. 163, 176, 113 A.2d 13 (1955); Tabor v. O'Grady, 59 N.J.Super. 330, 337-38, 157 A.2d 701 (App. Div.), modified in part on reh'g, 61 N.J.Super. 446, 161 A.2d 267 (App.Div. 1960). However, as to the latter, namely the duty to exercise care for one's own safety, until there is evidence of unsafe driving, there is no duty on the passenger's part "to supervise the driving, to keep a lookout for danger or to warn of a danger." Tabor, supra, 59 N.J.Super. at 337, 157 A.2d 701. By the same token, when it becomes apparent to a reasonably prudent passenger that the vehicle in which he or she is riding is being driven negligently, "reasonable care requires the *829 passenger to protest or remonstrate with the driver in an effort to persuade him to drive carefully[, a]nd if [ignored,] . . . to leave the car when a reasonable opportunity is afforded, if a reasonably prudent man would do so in like circumstances." Lombardo, supra, 269 N.J.Super. at 54, 634 A.2d 550. Indeed, in considering the comparative negligence of a passenger injured in a vehicle operated by an intoxicated driver, the jury may well take into account the plaintiff's voluntary decision to ride in an automobile whose driver is known to be intoxicated, id. at 54-56, 634 A.2d 550, since the "[g]eneral rule is that [a] passenger is `bound to exercise such care for his own safety as the exigencies of the situation require.'" Id. at 54, 634 A.2d 550 (quoting Melone, supra, 18 N.J. at 176, 113 A.2d 13) (emphasis added). Thus, in determining a passenger's comparative negligence under the duty of self-protection, the jury must consider the following facts: (1) the driver's degree of intoxication; (2) the passenger's own intoxication level; (3) the passenger's knowledge that the driver had consumed an alcoholic beverage; and (4) the passenger's ability to leave the motor vehicle prior to the accident. See Lee v. Kiku Rest., 127 N.J. 170, 184-87, 603 A.2d 503 (1992).
Lombardo is illustrative. There, a passenger (Keith Lombardo) sued the motorist (Edward Hoag) and fellow passengers to recover for injuries sustained in an automobile accident. Lombardo, supra, 269 N.J.Super. at 39, 634 A.2d 550. One of the passengers was Ronald Niemeyer who just minutes before the crash had been driving Hoag's vehicle, but had returned the keys and control of the pickup truck to the owner. Id. at 39-43, 634 A.2d 550. Hoag, who police later determined had been intoxicated at the time, then proceeded to drive the vehicle into a parked car. Id. at 43-44, 634 A.2d 550. At the ensuing trial, the judge, in enumerating a new duty, extended "`the concept of negligent entrustment . . . to encompass [Niemeyer's] situation[ ] [namely] where [a] person who has temporary use of a vehicle returns the vehicle to its rightful owner, who he knows or should have known is intoxicated.'" Id. at 47, 634 A.2d 550 (quoting Lombardo v. Hoag, 237 N.J.Super. 87, 90, 566 A.2d 1185 (Law Div.1989), rev'd, Lombardo, supra, 269 N.J.Super. at 56, 634 A.2d 550). The judge further extended the duty imposed on Niemeyer "to all persons, including the vehicle's passengers, in a position to prevent an intoxicated person from driving," and instructed the jury accordingly. Id. at 48, 634 A.2d 550 (emphasis added).
On appeal, we found the latter ruling an "unwarranted extension of established legal principles" by imposing a new duty on anyone beyond those in control and operation of the vehicle. Ibid. Accordingly, we expressly rejected "that portion of the trial judge's instruction[ ] that imposed a duty on all persons, including passengers[,] to prevent the owner of a vehicle from driving if that owner is or is thought to be intoxicated." Id. at 53, 634 A.2d 550. And, although we did not need to resolve the other issue in light of the jury verdict absolving Niemeyer from liability, we expressed serious reservations about extending any such duty "to include . . . a non-owner who drove the vehicle and subsequently relinquished control to the owner," id. at 47, 634 A.2d 550, noting that Niemeyer had no more than mechanical control of the vehicle, operated it under the consent and control of the owner, and only within the scope of authority then given. Id. at 52, 634 A.2d 550.
Other jurisdictions have declined to hold passengers, who are neither owners nor custodians of the vehicle, responsible to third-parties for the tortious conduct of intoxicated drivers, absent either a special relationship to the tortfeasor, or substantial *830 encouragement contributing to the tortfeasor's misconduct. See, e.g., Dennison v. Klotz, 12 Conn.App. 570, 532 A.2d 1311, 1317 (1987) (no duty owed by defendant passenger to fellow plaintiff passenger injured by intoxicated driver), certif. denied, 206 Conn. 803, 535 A.2d 1317 (1988); Akins v. Hamblin, 237 Kan. 742, 703 P.2d 771, 773-74, 776 (1985) (auto passenger owes no duty to other passengers and third persons unless passenger and driver were involved in a joint venture or had a special relationship which created some duty to allow driver's negligence to be imputed to passenger); Danos v. St. Pierre, 383 So.2d 1019, 1022 (La.Ct.App. 1980) (guest passenger who knew or should have known that host driver was intoxicated had no duty to other motorists injured by intoxicated driver when there was no special relationship), aff'd, 402 So.2d 633, 637 (La.1981); Brown v. Jones, 200 Mich.App. 212, 503 N.W.2d 735, 736-37 (absent special relationship, minor guest passengers owed no duty to other motorists injured by intoxicated driver), appeal denied, 444 Mich. 909, 512 N.W.2d 318 (1993); Olson v. Ische, 343 N.W.2d 284, 288 (Minn.1984) (absent special relationship, guest passenger, who knew driver was intoxicated, owed no duty to third-party pedestrian injured by driver); Lind v. Slowinski, 450 N.W.2d 353, 356-57 (Minn.Ct.App.) (guest passenger, who requested girlfriend plaintiff to sit on his lap, owed no duty to plaintiff passenger when she was injured by the voluntarily intoxicated driver), review denied (Minn.1990); Cecil v. Hardin, 575 S.W.2d 268, 270 (Tenn.1978) (absent special relationship or substantial encouragement, guest passenger owed no duty to third-party bicyclist injured by intoxicated driver). Cf. Knighten v. Sam's Parking Valet, 206 Cal.App.3d 69, 253 Cal. Rptr. 365, 366-68 (1988) (restaurant valet owed no duty to withhold vehicle when valet returned keys to an intoxicated restaurant patron, as there was no special relationship and thus no duty to control his conduct), review denied (Cal. 1989). But see Adams v. Morris, 584 S.W.2d 712, 716 (Tex.Civ.App.1979) (defendant passenger owed duty of reasonable care, such as requesting the driver to slow down, when intoxicated driver injured plaintiff pedestrian).
A special relationship exists where the occupant has some control over the driver, as where the driver is in the occupant's employ or where they are engaged in a joint enterprise or venture. See Price v. Halstead, 177 W.Va. 592, 355 S.E.2d 380, 385-86 (1987) (citing 7A Am.Jur.2d Automobiles & Highway Traffic § 635 (1980)). This well-recognized exception to the general rule of passenger non-liability is also embodied in the Restatement (Second) of Torts, which provides in section 315:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.
[Restatement (Second) of Torts § 315 (1965) (emphasis added).]
Such special relationships include parent-child, id. at § 316; master-servant, id. at § 317; landlord-tenant, id. at § 318; and guardian-ward, id. at § 319. Cf. Wagner v. Schlue, 255 N.J.Super. 391, 397, 605 A.2d 294 (Law Div.1992) (stating that defendant husband may be found liable to injured plaintiff wife when defendant husband gave keys to visibly intoxicated plaintiff wife and she drove negligently, but the issue whether defendant husband acted reasonably must be resolved by a jury). And even in these situations "where [a] duty [may] exist, the obligation is not an *831 absolute one to [e]nsure the plaintiff's safety, but requires only that the defendant exercise reasonable care." Prosser, supra, § 56 at 385 (citing Hoff v. Pub. Serv. Ry. Co., 91 N.J.L. 641, 645, 103 A. 209 (E. & A.1918)).
Thus, absent a special relationship, there is no duty to control a third person's conduct. Of course, as previously noted, the failure to exercise such control where reasonably necessary to his or her own safety may limit the plaintiff passenger's recovery against another where negligent driving caused the accident in which the plaintiff was injured. See Restatement (Second) of Torts § 315 comment b (1965).
The other recognized exception to the rule of passenger non-liability is where the passenger substantially encourages or assists in the driver's tortious conduct. Thus, section 876 of the Restatement (Second) of Torts provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him." See, e.g., Tricoli v. Centalanza, 100 N.J.L. 231, 234, 126 A. 214 (Sup.Ct.1924), aff'd, 101 N.J.L. 570, 129 A. 923 (E. & A.1925) (battery between multiple family members during the holidays). In those jurisdictions which permit recovery under section 876, all involved situations where the plaintiff demonstrated that the defendant passenger actively encouraged the driver to commit the tortious conduct. See, e.g., Cobb v. Indian Springs, Inc., 258 Ark. 9, 522 S.W.2d 383, 387 (1975) (substantial encouragement or assistance in the driver's tortious conduct could be found where the defendant was respected as an authority figure by the minor driver and he encouraged him to demonstrate the vehicle's performance ability); Sanke v. Bechina, 216 Ill.App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212, 1213 (passenger's encouragement that driver ignore a stop sign and exceed the posted speed limit fell squarely within the conduct contemplated by section 876), appeal denied, 142 Ill.2d 665, 164 Ill.Dec. 928, 584 N.E.2d 140 (1991); Cooper v. Bondoni, 841 P.2d 608, 611-12 (Okla.App.) (minor passengers gave substantial assistance and encouragement to minor driver's negligent operation of his vehicle where they provided him with alcoholic beverages and urged him to pass a truck while climbing a hill in a no-passing zone), cert. denied (Okla.1992); Aebischer v. Reidt, 74 Or.App. 692, 704 P.2d 531, 532 (minor passenger gave substantial assistance and encouragement to minor driver's operation of his vehicle in an impaired condition by continuously refilling a marijuana pipe and permitting him to smoke from it), review denied, 300 Or. 332, 710 P.2d 147 (1985); Price, supra, 355 S.E.2d at 385-87 (passengers in a vehicle operated by a drunk driver owed a duty to other motorists on the highway where the passengers furnished marijuana and alcohol to the driver). Cf. Kelly v. Gwinnell, 96 N.J. 538, 548-49, 476 A.2d 1219 (1984) (holding that a social host, who furnishes alcohol to a visibly intoxicated guest who he or she knows will thereafter drive away, becomes liable to third parties injured by the drunken driver's negligence if the accident was caused by the intoxication); Verni v. Harry M. Stevens, Inc. of N.J., 387 N.J.Super. 160, 187, 903 A.2d 475 (App. Div.2006) (stating that negligence by a licensed alcoholic beverage server, under the Alcoholic Beverage Server Act, N.J.S.A. 2A:22A-1 to -7, may be the basis for civil liability when the server serves alcohol to a visibly intoxicated patron at a Giants' football game and the patron later drives intoxicated and injures a third-party motorist), certif. denied, 189 N.J. 429, 915 A.2d 1052 (2007).
Correspondingly, liability has not been imposed where it was established that the *832 passengers were merely companions who did nothing to substantially encourage or assist the driver in his or her voluntary consumption of alcohol and operation of the vehicle while intoxicated. See, e.g., Cully v. Bianca, 186 Cal.App.3d 1172, 231 Cal.Rptr. 279, 282-83 (1986) (other than passengers' accompaniment of driver after they obtained and drank tequila, the plaintiff pointed to no facts indicating that the passengers gave substantial assistance and encouragement to the driver), superseded by statute on other grounds, Cal. Bus. & Prof.Code § 25602.1 (Deering 2007); Slicer v. Quigley, 180 Conn. 252, 429 A.2d 855, 859 (1980) (aside from the minor passenger's actions in drinking and driving with driver for two hours before the accident, there was no evidence that the passenger had given substantial assistance or encouragement to the driver to drive while intoxicated), overruled on other grounds by Ely v. Murphy, 207 Conn. 88, 540 A.2d 54, 58 (1988); Stock v. Fife, 13 Mass.App.Ct. 75, 430 N.E.2d 845, 849-50 n. 10 (facts did not permit recovery under section 876 where there was no showing that the passengers forced, pressured, or induced the driver to drink), review denied, 385 Mass. 1103, 441 N.E.2d 1043 (1982); Olson, supra, 343 N.W.2d at 289 (no substantial encouragement to impose liability under section 876 where the driver and passenger each drank voluntarily and the passenger merely accompanied the driver on his trip); Lind, supra, 450 N.W.2d at 357 (passengers did not give substantial assistance and encouragement to the driver where the passengers' and driver's consumption of alcohol was entirely voluntary); Welc v. Porter, 450 Pa.Super. 112, 675 A.2d 334, 337-38 (minor defendant owed no duty to other motorists when plaintiff failed to show that minor defendant ordered or induced the driver to drink and drive while intoxicated), appeal denied, 546 Pa. 647, 683 A.2d 885 (1996); Cecil, supra, 575 S.W.2d at 272-73 (passenger's conduct in voluntarily consuming alcohol with the driver and in acquiescing in the driver's decision to drive his own car fell far short of the substantial encouragement and assistance required to justify liability under section 876); see also Clayton v. McCullough, 448 Pa.Super. 126, 670 A.2d 710, 713 (no recovery was possible under section 876 where there were no factual averments indicating that the passenger gave substantial assistance or encouragement to the driver to engage in tortious conduct), appeal denied, 544 Pa. 667, 677 A.2d 838 (1996).
In a somewhat different context, we recently had occasion to examine the duty of a passenger to provide emergency assistance to a motorcyclist struck by an impaired motorist and left to die in the middle of the road while the motorist illegally left the scene of the accident without summoning help. Podias, supra, 394 N.J.Super. at 343-45, 926 A.2d 859. We noted that while the faultless passenger may not have been legally obligated "to render assistance himself, he [was] at least required to take reasonable care that he . . . not prevent others from giving it," id. at 348-49, 926 A.2d 859, and thus "there may be liability for [actively] interfering with the plaintiff's opportunity [for] obtaining assistance." Id. at 349, 926 A.2d 859. Finding evidence that the passenger collaborated with and verbally supported the motorist's plan to leave the scene so they would not get caught, and citing Restatement (Second) of Torts, supra, § 876, we held that there was a jury question whether the defendant knowingly gave substantial assistance to the tortfeasor motorist, Podias, supra, 394 N.J.Super. at 354-55, 926 A.2d 859, and therefore reversed the summary judgment dismissal of the action brought by the motorcyclist's estate against the passenger. Id. at 356, 926 A.2d 859.
*833 Governed by these legal principles, we conclude that Kakoda's conduct does not, as a matter of law, give rise to a legal duty owed plaintiff, her fellow passenger injured by Dunfee's conduct. It is undisputed that Kakoda did not own, operate, possess or otherwise exert custody over Dunfee's vehicle, which remained in Dunfee's control at all relevant times. Moreover, Kakoda never interfered with Dunfee's operation of the vehicle. Nor was she using Dunfee or the vehicle for her own purposes. See, e.g., Restatement (Second) of Torts, supra, § 307. She was merely a companion accompanying both plaintiff and Dunfee to a party.
Kakoda also bore no "special relation" to either the driver or injured passenger. Absent also is any proof that Kakoda encouraged or assisted Dunfee in the commission of the wrong or in any conduct leading up to it. On the contrary, it was plaintiff who appears to have goaded Dunfee into speeding, behavior to which Kakoda repeatedly vocally objected, but from which she obviously could not extricate herself for her own safety. Thus, even considering the usual rules of comparative negligence, there is nothing in the record to suggest Kakoda breached any duty of self-protection, much less of the protection of others with whom she bore no special relationship. There being no genuine issue of material fact on this score, we find no vicarious liability as a matter of law.
Despite plaintiff's failure to pigeonhole Kakoda into one of the limited exceptions to passenger non-liability, he nevertheless argues that civil liability arises from her violation of N.J.S.A. 39:4-50(a), designed to protect a class of persons in which plaintiff falls. We disagree.
To be sure, "[u]nder certain circumstances a violation of a statute can generate a civil remedy even where no such remedy is included in the act." Parks v. Pep Boys, 282 N.J.Super. 1, 14, 659 A.2d 471 (App.Div.1995). Our "driving while intoxicated" statute, N.J.S.A. 39:4-50 penalizes:
a person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood.
[N.J.S.A. 39:4-50(a) (emphasis added).]
Contrary to plaintiff's argument, in order for a person to be convicted of permitting another to operate a motor vehicle under the influence of intoxicating liquor or drugs, or in violation of the statutory standard for blood alcohol level, the State must produce evidence that the person permitting use of the vehicle is its owner or custodian and in addition that such owner or custodian knew, or reasonably should have known, of the permittee's impaired condition to drive. See State v. Skillman, 226 N.J.Super. 193, 199-200, 543 A.2d 1016 (App.Div.1988); see also State v. Zanger, 370 N.J.Super. 360, 368, 851 A.2d 134 (Law Div.2004). "Thus, the basis for imposition of such strict liability rests upon the common-sense reasoning that the violator always has it within his or her control to prevent commission of such an offense by the exercise of reasonable care." Skillman, supra, 226 N.J.Super. at 199, 543 A.2d 1016. Furthermore, "[w]e do not believe that the Legislature intended *834 to impose criminal responsibility in circumstances which are clearly beyond the control or knowledge of an owner or custodian." Ibid. (emphasis added). Indeed, the Legislature's use of the word "permit," meaning "to consent to; to give permission to; to afford opportunity to[,]" Webster's II New College Dictionary 819 (2001), implies the element of ownership, custody or control necessary to withhold permission to operate the vehicle as well. Thus, our D.W.I. statute has never been applied, and rightly so, to mere passengers in a vehicle owned or in the custody of another. See generally Lombardo, supra, 269 N.J.Super. at 54, 634 A.2d 550; State v. Gormley, 139 N.J.Super. 556, 558-60, 354 A.2d 674 (App.Div.1976). Since Kakoda was neither an owner, operator, custodian nor a person in control of Dunfee's vehicle, she has not violated N.J.S.A. 39:4-50(a), so as to give rise to a civil remedy in favor of plaintiff.
Affirmed.
NOTES
[1] Subsequent to the entry of the summary judgment order, dismissing all claims against Kakoda, the matter between plaintiff and Dunfee settled and the judge then entered an order for judgment in favor of plaintiff.