**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4636-15T4
           A-4637-15T4


MAZEL, LLC and DORCA, INC.
t/a RAMADA INN OF TOMS RIVER,

    Plaintiffs-Appellants,

v.

TOWNSHIP OF TOMS RIVER,
DOVER WOODS HEALTHCARE CENTER
and EREZ HEALTHCARE REALTY
COMPANY, LLC,

    Defendants-Respondents.

_____


DOVER PARKADE, LLC,

    Plaintiff-Appellant,

v.

DOVER WOODS HEALTHCARE CENTER and
EREZ HEALTHCARE REALTY COMPANY,
LLC,

    Defendants-Respondents.

_____

MAZEL, LLC and DORCA, INC.
t/a RAMADA INN OF TOMS RIVER,

    Plaintiffs-Appellants,

v.

DOVER WOODS HEALTHCARE CENTER
and EREZ HEALTHCARE REALTY
COMPANY, LLC,

    Defendants-Respondents.

_____

Argued May 9, 2018 — Decided July 10, 2018

Before Judges Nugent, Currier, and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket Nos.
L-2619-11, L-3477-09, and L-3505-12.

Alexis L. Gasiorowski argued the cause for
appellants (Gasiorowski and Holobinko,
attorneys; Alexis L. Gasiorowski, on the
briefs).

Edward F. Liston, Jr., argued the cause for
respondents Dover Woods Health Care Center and
Erez Health Care Realty Company, LLC.

R. Garry Mundy, attorney for respondent
Township of Toms River, joins in the brief of
Dover Woods Health Care Center and Erez Health
Care Realty Company, LLC.

PER CURIAM

In these related actions, plaintiffs, Mazel, LLC and Dorca, Inc. t/a Ramada Inn of Toms River, appeal from the December 23, 2013 and March 19, 2014 orders granting summary judgment in favor

of defendants Dover Woods Healthcare Center and Erez Healthcare Realty Company, Inc. We affirm.

## I.

### The Zoning Action

In 1983, an applicant unrelated to these parties filed a zoning permit application seeking to build a "retirement hotel" for senior citizens. The application sought a conditional use of the specific parcel of land located in a Rural Highway Business (RHB) zone to operate as a hotel known as the Dover Retirement Hotel (the facility). The applicant intended to seek a residential health care license for the facility and comply with all State Department of Health standards. Later that year, the Dover Township[1] Planning Board (the Board) passed a resolution granting the request for a conditional use permit.

In accordance with the resolution, the applicant constructed a 136-unit hotel containing 240 beds. Although the resolution specified the facility would be built to hotel specifications, it also required the facility to be licensed by the State and comply

---

[1] Dover Township is now known as the Township of Toms River (the Township).

with N.J.A.C. 8:43-1.1 to -15.8.[2]  Upon completion, the facility

was licensed as a residential health care facility by the State

and remains today a licensed residential health care facility.[3]

In 1991, the Township amended its zoning ordinances and the

RHB zone's permitted uses were expanded to include both "medical

service facilities" and "hotels."  Toms River, N.J., Code §§ 348-

10.27(A)(15) and 348-10.27(A)(17).  Prior to this amendment,

hotels were permitted in the RHB zone as conditional uses only and

medical service facilities were neither permitted uses nor

conditional uses.

In 1999, Erez Healthcare Realty Company, LLC, purchased the

Dover Retirement Hotel and renamed the facility Dover Woods

Healthcare Center.  In the ensuing years, numerous complaints were

made to the Township regarding the conduct of the facility's

residents.  In 2009, the Township filed a complaint against

_____

[2]  This chapter of the Code sets forth the regulations for the
licensure of residential health care facilities by the State
Department of Health and Senior Services.  N.J.A.C. 8:43-1.1.

[3]  The facility was formerly licensed and regulated by the New
Jersey Department of Health and Senior Services.  In 2005, the
Department of Community Affairs (the DCA) took over licensure and
oversight of some residential health care facilities, including
Dover Woods.

defendants alleging a public nuisance and seeking injunctive relief. The litigation was later settled.[4]

Plaintiffs are the owners of a Ramada Inn that is located next to Dover Woods. In 2012, plaintiffs sent a letter to the DCA requesting an investigation of the facility. The DCA responded, finding that the information provided "did not evidence any violations of the licensure code standards that govern Dover Woods." In its letter, the DCA described Dover Woods as

> one of the largest facilities of its kind in the State of New Jersey that provides permanent residence for up to (240) physically and mentally disabled tenants appropriately discharged from area hospitals and the State's mental health system that are in need of affordable housing to prevent homelessness and RHCF code-authorized health maintenance and monitoring services to facilitate independent living in the community.

The agency advised the facility had recently undergone a licensing evaluation and remained compliant with regulations. The letter further noted: "The Dover Woods licensee is required under law to operate an 'open' facility. This licensee is not legally authorized to confine residents in the facility or restrict their movements in the community."

---

[4]   In the settlement agreement, defendants agreed to install lighting, surveillance cameras monitoring the facility's entrance, and a new chain link fence between the facility and Ramada hotel properties.

Plaintiffs filed a complaint in lieu of prerogative writs against the Township and defendants, alleging the facility was in violation of the Township's zoning ordinances and operating as a non-permitted use, as the original zoning approval in 1983 as a conditional use no longer existed. Defendants answered the complaint and Erez Healthcare filed a counterclaim for malicious prosecution. After the completion of discovery, defendants[5] filed a motion for summary judgment, which the trial court granted as to counts one through seven of the complaint.[6] In a comprehensive twenty-seven page written decision, the motion judge noted:

> both "medical services facilities" and "hotels" now constitute permitted uses within the RHB Zone in Toms River. For this reason, the court [finds] that even if Dover Woods does not meet the definition of a "medical services facility," it may still constitute a permitted use within the RHB Zone if it meets the definition for a hotel.

The judge found "[t]he undisputed record evidence establishes that Dover Woods meets the zoning ordinance definition of a hotel . . . [and] that Dover Woods' status as a residential health care facility does not affect its status as a hotel." He noted the Board understood in 1983 that the retirement hotel "would not

---

[5] The Township did not join in the motion for summary judgment.

[6] Count eight alleged a breach of the settlement agreement resolving the prior litigation and requested the court enforce that agreement.

operate in the traditional notion of a hotel." The proposal before the Board indicated the facility would operate as a "residential health care facility," and the resolution specifically stated the facility would be licensed by the State of New Jersey under the provisions governing residential health care facilities.

The judge further found Dover Woods was operating as a medical service facility as defined under the 1991 amendments to the Township zoning ordinances. He stated there was "no meaningful difference between a 'residential health care facility' such as Dover Woods and a 'long-term residential health care facility'" and found Dover Woods "substantially conforms to the ordinance definition of long-term residential health care facilities."

A December 23, 2013 order dismissed counts one through seven of plaintiffs' complaint as to all defendants. The judge found Dover Woods was a permitted use and not in violation of any of the conditions imposed by the Board in its 1983 resolution granting approval of the facility as a conditional use. A subsequent motion for reconsideration was denied on February 25, 2014.[7]

---

[7] Plaintiffs' appeal of this order was dismissed as interlocutory in Mazel, LLC v. Twp. of Toms River, No. A-3344-13 (App. Div. Mar. 31, 2016). The parties subsequently executed a stipulation of dismissal with prejudice as to the counterclaim. The judge reserved decision on count eight in the December 23, 2013 order. The record does not reflect the ultimate disposition of that count of the complaint.

## II.

### The Nuisance Action

In September 2009, plaintiffs filed a complaint[8] against defendants alleging the facility was a danger to its residents and had become a public and private nuisance because of poor supervision, a lack of security measures, and a disregard for state health and safety regulations, which continuously interfered with the operation of the Ramada Inn. Specifically, plaintiffs alleged frequent occurrences of residents loitering on and defiling Ramada property, accosting its guests, and trespassing inside the hotel.

After discovery, defendants filed a motion for summary judgment. We discern the facts from that record. Numerous complaints were recorded of facility residents actively hallucinating, throwing furniture, and screaming at all hours of the night without any intervention from facility staff. Local police officers testified in depositions to responding to hundreds of phone calls from facility staff requesting assistance for violent residents or residents having psychotic episodes, frequent 9-1-1 phone calls made by residents calling and hanging up, and

---

[8] In August 2011, plaintiff Dover Parkade, LLC, filed a complaint against defendants with similar allegations. The trial court consolidated the complaints in January 2013.

countless calls from local businesses and citizens complaining of residents having psychotic episodes outside of the facility and screaming and yelling inside and outside of their businesses.

Robert N. Davison, a licensed counselor and former Chairman of Governor Codey's task force on mental health, spent fifty-one hours at the facility, posing as a homeless person and documenting his experience. He testified residents were permitted to roam freely within and outside of the facility. Davison described the building being in gross disrepair inside and out, garbage and beer cans littered the front lawn, residents experienced loud psychotic episodes without any staff assistance, smoked cigarettes inside the facility, and, on a number of occasions, walked through the Ramada parking lot on the way to other locations.

Joanne Kotler, the facility's administrator, testified at her deposition that regulations prevented the facility from immediately evicting or controlling residents' actions. The facility also could not force residents to take their prescribed medications.

After hearing oral argument, a second trial judge granted summary judgment in favor of defendants. In a March 19, 2014

written decision,[9] the judge concluded that plaintiffs could not sustain an action for nuisance. The court noted the alleged harm from the facility was not caused by the specific use of defendant's property but rather by independent third parties over whom defendants had no control. The judge referred to N.J.A.C. 5:27A-14.2 and its specific provisions preventing Dover Woods from confining its residents in the facility or restricting their movements in the community. Because there was no special relationship demonstrated between the parties, defendant had no duty to control the conduct of their residents and, therefore, could not be held vicariously liable for the residents' actions.

                              III.

We conduct a de novo review of both the zoning and nuisance actions, and review the grant of summary judgment under the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We must determine whether there are any genuine issues of material fact when the evidence is viewed in the light most favorable to the non-moving party. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012). Summary judgment must be granted "if the pleadings,

---

[9]  After plaintiffs appealed this decision, we dismissed it as interlocutory in Mazel, L.L.C. v. Dover Woods Healthcare Ctr., No. A-3798-13 (App. Div. Mar. 31, 2016). Defendants subsequently dismissed their counterclaim.

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). To defeat summary judgment, the non-moving party must bring forth "evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529 (quoting R. 4:46-2).

A.

The Zoning Action

Plaintiffs argue on appeal the court erred in finding Dover Woods was a medical service facility and, therefore, a permitted use in the RHB zone. Notably, plaintiffs do not address the court's concurrent ruling that Dover Woods met the definition of a hotel, also a permitted use in the zone.

A hotel has been a permitted use in the RHB zone since 1991. Toms River, N.J., Code § 348-10.27(A)(17). A hotel[10] is defined as a "building which contains 10 or more units of dwelling space and which is kept, used, maintained, advertised as, or held out to be a place where sleeping or dwelling accommodations are

_____

[10] This definition was most recently amended on October 28, 2008.

available to transient guests." Toms River, N.J., Code § 348-2.3 (emphasis added).

In passing the 1983 resolution, the Board specifically found the applicant intended to construct a 136-unit hotel, and the facility was built to hotel specifications. Dover Woods currently has the same number of rooms and beds as when built, far surpassing the required number of rooms to constitute a hotel under the Township ordinance. As a hotel is a permitted use within the pertinent zone, summary judgment was properly granted to defendants on that ground alone.

The Township ordinances also support the conclusion that Dover Woods is a permissible use in the RHB zone as "[m]edical service facilities, including but not limited to health care facilities, continuing-care retirement communities and developments[,] and long-term residential health care facilities" are permitted uses in the that zone. Toms River, N.J., Code § 348-10.27(A)(15). Under the applicable definitions, Dover Woods qualifies as both a health care facility and a long-term residential health care facility. See Toms River, N.J., Code § 348-2.3.

We are satisfied there was sufficient credible evidence in the record to support the trial judge's findings that Dover Woods is a permitted use, thus requiring the grant of summary judgment

12

to defendants. We, therefore, can discern no error in the denial of the motion for reconsideration. "[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

## B.

## The Nuisance Action

Plaintiffs argue on appeal the trial judge erred in finding there was no special relationship between defendants and their residents to impose vicarious liability. They contend the governing regulations grant complete control to Dover Woods over its residents who can be discharged from its facility at any time. We disagree.

"A cause of action for private nuisance derives from the defendant's 'unreasonable interference with the use and enjoyment' of the plaintiff's property." Ross v. Lowitz, 222 N.J. 494, 505 (2015) (quoting Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959)). In order to establish a claim for nuisance, "it must be shown that 'there has been an unreasonable, unwarranted or unlawful use by a person of [another's] real property which is resulting in a material annoyance, inconvenience or hurt.'" State,

Dep't of Envtl. Prot. v. Exxon Corp., 151 N.J. Super. 464, 482 (Ch. Div. 1977) (quoting Cherry Hill Twp. v. N.J. Racing Comm'n, 131 N.J. Super. 125 (Law Div.), aff'd, 131 N.J. Super. 482, 483 (App. Div. 1974)).

Two types of conduct can give rise to nuisance claims: affirmative acts and failures to act while under a duty to do so. See Ross, 222 N.J. at 507-08 (citing Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 591-92 (1982)). However, "absent a special relationship, there is no duty to control a third person's conduct." Champion ex rel. Ezzo v. Dunfee, 398 N.J. Super. 112, 122 (App. Div. 2008); see also Restatement (Second) of Torts § 315 (Am. Law Inst. 1965)(the Restatement).

When analyzing nuisance claims we turn to the principles articulated in the Restatement. Pursuant to § 315,

> [t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> > (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> >
> > (b) a special relation exists between the actor and the other which gives to the other a right to protection.

"The existence of a legal duty is a question of law to be decided by the court, rather than the jury."  Champion, 398 N.J. Super. at 117 (citing Wang v. Allstate Ins., 125 N.J. 2, 15 (1991)).  If a special relationship does not exist between the parties, plaintiffs' claims must fail as all of the alleged interference with the use and enjoyment of its land was attributed to independent third parties.

In assessing whether defendants had a duty to control their residents, therefore creating a special relationship and vicarious liability, we turn to the regulatory framework governing Dover Woods.  As established above, Dover Woods is a residential health care facility licensed and regulated by the DCA.  The standards for licensure of such facilities are set forth in N.J.A.C. 5:27A-1.1 to -19.1.1.

N.J.A.C. 5:27A-14.2 delineates the rights of each resident admitted to these facilities.  These rights include assistance in obtaining medical care and the refusal of medication and treatment after being informed of the effects of such actions.  Ibid. Residents are allowed to be outside the facility, are not required to go to bed and have the right to be outside their bedrooms. Ibid.  Other than in the case of an emergency, a resident may be

> transferred or discharged only for medical
> reasons or for his or her welfare or that of
> other residents upon the written order of the

resident's physician, advanced practice nurse, or physician assistant, who shall document the reason for the transfer or discharge in the resident's record, or for nonpayment for the resident's stay, or for repeated violations of the facility's written rules and regulations after being advised of them in writing. . . .

> i. If a transfer or discharge on a non-emergency basis is requested by the facility, the resident or, in the case of an adjudicated mentally incompetent resident, the next of kin and/or sponsor and/or guardian, shall be given at least 30 days advance notice in writing of such transfer or discharge.

[N.J.A.C. 5:27A-14.2 (4) and (4)(i).]

It is evident Dover Woods is statutorily prohibited from exercising the degree of control typically necessary to establish a special relationship. Residents must be given notice of thirty days and afforded a hearing prior to any discharge. And Dover Woods has no control over its residents outside of the facility. The governing regulations prevent the facility from taking the affirmative steps urged by plaintiffs to control their residents. Without such control, plaintiffs have not demonstrated a special relationship exists between defendants and their residents. As a result, defendants cannot be held vicariously liable for the actions of their residents and plaintiffs cannot support their

cause of action.[11]  Therefore, the trial judge properly granted summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[11]  In light of our decision, we need not address plaintiffs' remaining arguments.

A-4636-15T4